# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2851

_____

| | | |
|---|---|---|
| United States of America | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| Cody Stanley, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: February 11, 2004

Filed: April 6, 2004

_____

Before BYE, HEANEY, Circuit Judges, and HOVLAND,[1] District Judge.

_____

HEANEY, Circuit Judge.

Cody Stanley pled guilty to one count of conspiring to distribute 500 grams or more of a mixture containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. At sentencing, Stanley moved for a two-level

_____

[1]The Honorable Daniel L. Hovland, United States District Judge for the District of North Dakota, sitting by designation.

reduction in his offense level for being a minor participant in the offense. The district court[2] denied the motion. Stanley now appeals, and we affirm.

## BACKGROUND

In 2002, Stanley was part of a conspiracy to distribute methamphetamine with Vincent Deherrerea, Chad Risius, Dan Vinton, and others. Deherrerea was the main source for the drug, which he received in large quantities from suppliers in Colorado and Wisconsin. After Deherrerea received methamphetamine, he would give it to others, including Stanley, for redistribution. Stanley admitted that he personally distributed methamphetamine to numerous people.

Stanley not only helped distribute methamphetamine, but assisted in obtaining and safeguarding it as well. Stanley once tried to purchase $2,000 worth of methamphetamine for Deherrerea from another supplier, but was unsuccessful. He often acted as Deherrerea's driver and accompanied him on out-of-state trips to pick up methamphetamine. On one occasion, Stanley drove Deherrerea to Colorado so that Deherrerea could pick up ten pounds of methamphetamine. He also drove Deherrerea to the residence of Travis Zeisman, where Deherrerea would regularly sell one ounce quantities of methamphetamine to Zeisman. In addition, Stanley stored methamphetamine for Deherrerea.

Prior to sentencing, Stanley objected to the Presentence Report to the extent that it failed to grant him a two-level reduction in recognition of his minor role in the offense. He entered into a stipulation of facts with the government in which he specifically admitted much of the conduct outlined above. He admitted taking Deherrerea to Colorado to purchase methamphetamine once when the amount

[2]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

Deherrerea obtained could have been as much as ten pounds. According to the stipulation, however, Stanley did not know the exact amount purchased and did not directly participate in or fund this transaction. The government further agreed that others familiar with the conspiracy characterized Deherrerea as the leader of the group and Stanley as one of his subordinates.

At sentencing, Stanley moved for a two-level reduction in his offense level due to his minor role in the conspiracy and limited participation in the Colorado transaction, which accounted for most of the drug quantity attributed to him. He relied solely on the Presentence Report and the stipulation of facts in support of his motion. The district court denied the adjustment, finding that Stanley played multiple roles in the conspiracy as custodian, distributor, transporter, and would-be purchaser of the drugs, and that his deep involvement precluded a finding that he was a minor participant. Following unrelated adjustments, Stanley had a guideline sentencing range of 87-108 months. The district court sentenced Stanley to 87 months in prison to be followed by 4 years of supervised release. This appeal followed.

## ANALYSIS

The sole issue before us is whether the district court erred in refusing to grant Stanley a two-level role reduction at sentencing based on the stipulated facts and unobjected-to portions of the Presentence Report. We review the district court's factual findings at sentencing for clear error, and its interpretation and construction of the sentencing guidelines de novo. United States v. Snoddy, 139 F.3d 1224, 1226-27 (8th Cir. 1998). In some instances, our court has determined that cases involving undisputed facts should result in a de novo review. See United States v. McGarr, 330 F.3d 1048, 1050 (8th Cir. 2003); United States v. Waggoner, 103 F.3d 724, 726 (8th Cir. 1997). We have generally reviewed the district court's decision to grant or deny a sentencing reduction based on the defendant's role for clear error, however, "[b]ecause the evaluation of a participant's status in the offense involves a factual

determination." United States v. Field, 110 F.3d 587, 590 (8th Cir. 1997); see also United States v. Camacho, 348 F.3d 696, 700-01 (8th Cir. 2003) (reviewing the denial of a minor role reduction for clear error despite little dispute about the underlying facts); United States v. Alverez, 235 F.3d 1086, 1090 (8th Cir. 2000) ("'Whether a defendant qualifies for a minor participant reduction is a question of fact, the determination of which we review for clear error.'" (quoting United States v. Hale, 1 F.3d 691, 694 (8th Cir. 1993))). While there may be circumstances in which the absence of any factual dispute as to the defendant's role would result in de novo review, this is not such a case. The district court here was admittedly presented with a set of undisputed facts, but it was still required to deduce Stanley's role in the conspiracy based on those facts. That determination is a factual one, and we thus review for clear error.

A defendant is eligible to receive a two-level reduction if he was a minor participant in the criminal offense. USSG § 3B1.2(b). A minor participant is someone "who is less culpable than most other participants, but whose role could not be described as minimal." Id., comment. (n.5).

> The mere fact that a defendant is less culpable than his codefendants does not entitle defendant to "minor participant" status. Whether a downward adjustment is warranted is determined not only by comparing the acts of each participant in relation to the relevant conduct for which the participant is held accountable, but also by measuring each participant's individual acts and relative culpability against the elements of the offense.

Snoddy, 139 F.3d at 1228 (citations omitted). The burden of establishing eligibility for a mitigating role reduction rests with the defendant. United States v. Thompson, 60 F.3d 514, 517 (8th Cir. 1995).

We agree with the district court that Stanley has not met his burden of showing that he is eligible for a minor role reduction. He admitted that he distributed methamphetamine many times to several different people. He helped Deherrerea to obtain, transport, and store methamphetamine, and even attempted to procure it from other sources. Clearly, Stanley was less culpable than Deherrerea. Deherrerea was not the only other member of the conspiracy, however, and his leadership role is accounted for elsewhere in the guidelines. See USSG § 3B1.1 (requiring an increased offense level if a defendant was the organizer, leader, manager, or supervisor of other participants in the offense). Stanley has failed to show that he was less culpable than other members of the conspiracy, many of whom assisted Deherrerea in a similar fashion.

Stanley directs us to the transaction in which Deherrerea received ten pounds of methamphetamine from Colorado, which was included for the purpose of calculating his sentence. Though he accompanied Deherrerea to get the drugs and back to Iowa, he maintains that he was only a driver, entitling him to the minor role reduction. In Alverez, our court recognized that operating solely as a courier "does not automatically entitle the defendant to a downward adjustment" because "'[t]ransportation is a necessary part of illegal drug distribution.'" 235 F.3d at 1090 (quoting United States v. Martinez, 168 F.3d 1043, 1048 (8th Cir. 1999)). That is particularly true in this case, for the evidence showed that Deherrerea counted on drivers to effectuate his drug deals. When this transaction is considered in light of the evidence that being a courier was but one of many different duties Stanley undertook on behalf of the conspiracy, we cannot say the district court erred in denying a mitigating role reduction.

**CONCLUSION**

The judgment of the district court is affirmed.

_____